## THE OCEANIA VANCE.

### (District Court, W. D. Washington, N. D. August 31, 1914.)

#### No. 4046.

1. COLLISION (§ 82*) — TOWING TUG AND CROSSING SCHOONER — EXCESSIVE SPEED IN FOG.

A collision between a tug with a tow and a schooner on a crossing course in a thick fog, and in a place where vessels frequently passed, *held* due solely to the fault of the schooner in going at excessive speed; it being shown that there was a strong breeze, and that she was sailing with the wind, with practically all sails set, and making not less than 7 miles an hour. The action of the tug in first reversing, and then at once going ahead at full speed, when the schooner was sighted, not more than 200 feet away, *held* an act in extremis, and not imputable as a fault, even if an error.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 170–174; Dec. Dig. § 82.*]

2. COLLISION (§ 82*)—FOG—DUTY TO MAINTAIN MODERATE SPEED.

It is the duty of vessels to maintain a moderate speed in a fog, irrespective of statute, and this duty is especially incumbent on sailing vessels, which are not readily maneuvered.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 170–174; Dec. Dig. § 82.*]

In Admiralty. Suit for collision by the Puget Sound Tugboat Company, owner of the tug Sea Lion, against the schooner Oceania Vance; the Coast Shipping Company, claimant. Decree for libelant.

Hughes, McMicken, Dovell & Ramsey, of Seattle, Wash., for libelant.

Reynolds, Ballinger & Hutson, of Seattle, Wash., for claimant.

NETERER, District Judge. [1] At about 6:30 a. m., June 19, 1909, the Sea Lion, being 107 feet in length, beam 22 feet, depth of hold 13 feet, having in tow the barge Charger, having 1,700 ton capacity, laden with rock, and sailing from Cowlitz Bay on Waldron Island, bound for Grays Harbor, came into collision with the schooner Oceania Vance, while proceeding on her regular course toward the Straits of Juan de Fuca, the weather being thick and foggy. The course of the Sea Lion was SW–S–¼S, that being the usual course for steam vessels outward bound. Upon entering the fog the Sea Lion started to blow its whistle, a deep, coarse whistle, one long and two short blasts, the prescribed signal for a vessel having a tow. Act June 10, 1896, c. 401, Fed. Stat. Annot. vol. 2, page 159, 29 Stat. 381 (U. S. Comp. St. 1913, § 7853). This was continuously sounded until the time of the collision. Just prior to the collision the men on board the tug Sea Lion heard the Oceania Vance giving three blasts, which indicated that she

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

was a sailing vessel. 29 Stat. 381. The Sea Lion stopped its engines and blew its tow signal. The schooner answered by three blasts of her horn. The schooner was about 175 to 200 feet distant from the tug when first seen by the men on the tug and was heading toward amidships of the Sea Lion. The schooner observed the tug when it was about 300 feet distant. On seeing the schooner, the mate gave the signal to reverse the engines and ordered the quartermaster to put the wheel hard astarboard. At this time the captain, who had previously retired, reached the wheelhouse, and the mate went aft to endeavor to prevent the hauser from fouling the propeller. The Sea Lion, when backed, had a habit of swinging around to port very abruptly, thus bringing her right in line with the way the schooner was coming and making a collision inevitable. The captain, in an endeavor to avert the same, ordered full speed ahead; that being the only chance in his judgment that he then had. The three signals, namely, to stop, to back, and to go ahead, were given one right after the other. At the same time, the captain called to the lookout on the Oceania Vance to put the wheel of the schooner over. This request was not complied with, though good seamanship required such action. A few seconds later the bow of the Oceania Vance struck the Sea Lion about 25 feet forward of the latter's stern, cutting a hole variously estimated from 1½ to 3 feet in width. The Sea Lion sank within a few minutes in 72 fathoms of water. The Oceania Vance, at the time of the collision, was going at a speed to exceed 7 miles an hour. She was sailing before the wind, with the foresail, jib, spanker and mizzen topsail set. A "strong breeze" was blowing, and the place where the collision occurred was where ships frequently pass.

The liability in this case depends wholly upon the fact as to whether or not the speed at which the Oceania Vance was going was immoderate. It is strongly contended on the part of the claimant that she was going not to exceed a speed of 5 knots an hour, and that that was not an immoderate speed. I think a fair consideration of the testimony is conclusive that the schooner was going not less than 6½ or 7 knots an hour. The fact that she was sailing before the wind, with practically all of her sails set, with a "strong breeze" blowing, as stated by one of the witnesses, and by practically all of the witnesses that there was a good breeze, and the further fact of the testimony of the captain, immediately after the collision, that the boat was going at a speed of 6½ to 7 miles an hour, and he had concluded this after an examination of the log, and only modified his testimony upon the hearing, some two years after the collision, and all of the facts as disclosed by the witnesses in the record, would indicate that the vessel was moving at the speed suggested.

It is also strongly contended upon the part of the claimant that, even though the speed of the schooner was 7 miles an hour, that was not an immoderate speed, and that the conduct and action of the tug Sea Lion in reversing its engines and then going forward, instead of stopping the engines and moving at a moderate speed, was the cause of the injury, and it was the negligence of the tug Sea Lion that caused the collision. From a fair consideration of the evidence, I think it

must be concluded that what was done by the officers of the Sea Lion were acts in extremis, and, whether wise or not, is not imputable as a fault. Ship Blue Jacket v. Tacoma Mill Co., 144 U. S. 371, 12 Sup. Ct. 711, 36 L. Ed. 469; The Ludvig Holberg, 157 U. S. 60, 15 Sup. Ct. 477, 39 L. Ed. 620.

[2] In view of the density of the fog, it was imperative upon the schooner to move at a moderate speed. This is necessary in order to give approaching vessels an opportunity of observation and greater time within which to adjust themselves to the situation. It has been frequently held that a speed of 5 knots an hour is not an immoderate speed for a sailing vessel. If the schooner had been moving at 5 knots an hour instead of 7, as I believe the testimony to show, there would have been considerable more time, relatively speaking, after the vessel had been discovered, for the crafts to adjust themselves with relation to the situation, and the collision having occurred at a place where ships are frequently passing, the necessity was therefore emphasized for moderation in speed. This is a duty irrespective of the statute. The Rhode Island (D. C.) 17 Fed. 554. In Act Aug. 19, 1890, c. 802, 26 Stat. at Large, page 326, 2 Fed. Stat. Annot. page 160 (U. S. Comp. St. 1913, § 7854), it is provided:

"Every vessel shall, in a fog, mist, falling snow, or heavy rainstorms, go at a moderate speed, having careful regard to the existing circumstances and conditions. A steam vessel hearing, apparently forward of her beam, the fog signal of a vessel, the position of which is not ascertained shall, so far as the circumstances of the case shall permit, stop her engines, and then navigate with caution until danger of collision is over."

While this statute does not include sailing crafts, yet the principle enunciated is held to comprehend and be applicable to sailing vessels. The further fact that a sailing vessel cannot be maneuvered in the manner required is a strong reason, as stated by the courts, for so moderating her speed as to furnish effective aid to an approaching steamer, charged with the duty of avoiding her. She can do practically nothing beyond putting her helm up or down to "ease the blow," after the danger of collision has become imminent.

I think this case is on "all fours" with the Chattahoochee, 173 U. S. 540, 19 Sup. Ct. 491, 43 L. Ed. 801, where the duty of a sailing vessel in a fog is defined, and in which the court reviews all of the authorities. A consideration of that case, with the facts in this case, precludes any conclusion other than that a decree should be entered for libelant as prayed for; and it is so ordered.